UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

GERALD ALAN SHORT,

                    Plaintiff,                    Case No. 2:13-cv-215

v.                                            Honorable R. Allan Edgar

B. MARTYN, et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties. The Court will serve the complaint against Defendant Martyn.

## Discussion

I.     Factual allegations

Plaintiff Gerald Alan Short, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer B. Martyn, Sergeant G. Blakely, Sergeant L. Parker, Classification Director N. Marshall, Business Manager G. Sevarns, Resident Unit Manager Kathleen E. Nelson, Assistant Deputy Warden J. Young, Warden Mitch Perry, Grievance Specialist Kent C. Austin, Grievance Section Manager Richard D. Russell, MDOC Director Daniel E. Heyns, and Unknown Parties.

In his complaint, Plaintiff alleges that on January 15, 2011, while he was confined at the Newberry Correctional Facility (NCF), he signed up for a religious event called KERYX and received a callout to attend the event. On March 2, 2011, Plaintiff attended a pre-event meeting and was told by Chaplain VanSickle that he had been accepted to attend the event, and that clearance had been given to prisoners who held jobs within the facility. Plaintiff held a clerk position during the pertinent time period. On March 11, 2011, Plaintiff attended the first day of the event. During the event, Plaintiff went out to use the restroom and upon returning was met by his supervisor, Defendant Martyn. Defendant Martyn told Plaintiff to report to work "or else," and that Plaintiff could go tell that to the Chaplain. Corrections Officer Whitmer overheard this exchange and informed the Chaplain about Defendant Martyn's comment. Subsequently, Corrections Officer Whitmer and Chaplain VanSickle pulled Plaintiff aside and informed him that he was cleared to attend KERYX and that Defendant Martyn had been told to stand down. They also told Plaintiff that he should report Defendant Martyn immediately if he retaliated against Plaintiff for attending the

event.  Plaintiff states that there were two other clerks who provided relief for his job and that Defendant Martyn had also forbidden them from attending the event.  However, the other two clerks attended KERYX with no argument from Defendant Martyn.

On March 14, 2011, Plaintiff reported to his work detail.  Plaintiff states that Defendant Martyn allowed his clerks to bring coffee, a radio and reading material to the work assignment as a privilege, despite the fact that there was a posted rule against bringing personal items to a work detail.  Approximately two weeks later, on March 30, 2011, Defendant Martyn called Plaintiff to his desk and informed him that he was writing a 363 report on Plaintiff for abusing privileges and talking too much to other prisoners.  Defendant Martyn told Plaintiff that he could no longer bring his radio or coffee to work.  Plaintiff states that the other two clerks were still allowed to bring these items and that he was being singled out for attending KERYX.  Plaintiff reported the incident to Chaplain VanSickle, who told Plaintiff to file a grievance.

On April 7, 2011, Plaintiff filed a grievance and listed Corrections Officer Whitmer and Chaplain VanSickle as witnesses.  Chaplain VanSickle reviewed the grievance and agreed with the contents.  On April 17, 2011, Plaintiff was interviewed on the grievance by Defendant Blakely, but there was no indication that Corrections Officer Whitmer and Chaplain VanSickle had been interviewed.  Plaintiff states that once Defendant Martyn received notice of the grievance, he was told that he did not need to report to work on Saturdays.  Plaintiff states that the other two clerks continued to work on Saturdays.  On April 20, 2011, Plaintiff received a step I response, in which Defendant Martyn stated that although Plaintiff had been allowed to have personal items with him at work in the past, he could no longer do so because he had abused his privileges.  Plaintiff filed a step II appeal, asserting that he had never had a problem with Defendant Martyn until he attended

-3-

KERYX. In his step II response, Defendant Martyn stated that the 363 report had been written because Plaintiff jumped the chain of command and attended KERYX. However, Plaintiff notes that there is no 363 report on record pertaining to his attendance at KERYX.

On May 15, 2011, Defendant Martyn disposed of Plaintiff's Bible and a library book while Plaintiff was at lunch. When Plaintiff returned from lunch, he noticed the missing books and asked Defendant Martyn if he had seen them. Defendant Martyn denied knowledge of the books whereabouts. Plaintiff later discovered that his Bible had been thrown in the trash and that the other book had been returned to the library. Defendant Martyn claimed that he had given the Bible to the Chaplain, but Chaplain VanSickle denied receiving anything from Defendant Martyn. On May 19, 2011, Plaintiff received a response from Defendant Perry, which acknowledged Plaintiff's requests for witnesses to be interviewed, but did not specify the content of the witnesses' testimony. Defendant Perry stated that Defendant Martyn had denied harassing Plaintiff and had completed the 363 work report on March 30, 2011, because Plaintiff had not followed the chain of command.

Plaintiff asserts that the inconsistencies between Defendant Martyn's response to the step I grievance and his response to the step II grievance show that Defendant Martyn retaliated against him for attending KERYX. Plaintiff filed a step III appeal, which was denied by Defendants Austin and Russell on July 7, 2011. On June 12, 2011, Plaintiff filed a step I grievance asserting that Defendant Martyn was reducing his work time by refusing to allow him to work on Saturdays, despite the fact that other clerks were allowed to work. Plaintiff states that other Corrections Officers allowed him to work on Saturdays. Plaintiff's step I grievance was denied on June 27, 2011, and his step II appeal was denied on August 1, 2011, by Defendant Perry. Plaintiff filed a step III grievance appeal, which was denied by Defendants Austin and Russell on November 4, 2011.

-4-

Plaintiff alleges that Defendant Martyn wrote a misconduct ticket on him for having a pocket Bible with him when he reported for work. Plaintiff wrote a grievance regarding this ticket on July 8, 2011. In the response, Defendant Martyn falsely claimed that he warned Plaintiff on several occasions prior to writing the ticket. Plaintiff was never interviewed on the grievance and on July 13, 2011, it was denied. Plaintiff's step II appeal was denied by Defendant Perry on September 29, 2011, and his step III appeal was denied on December 9, 2011, by Defendant Russell.

On July 25, 2011, Plaintiff filed a grievance on Defendants Perry and Young for failing to intervene in Defendant Martyn's ongoing campaign of retaliation and seeking again to have his witnesses interviewed. Plaintiff was interviewed on the grievance by Defendant Nelson on August 4, 2011, and the grievance was denied on August 5, 2011. Plaintiff's step II appeal was denied on September 16, 2011, by Defendant Sevarns. Plaintiff's step III appeal was denied by Defendant Austin and mailed by Defendant Russell.

On July 27, 2011, Plaintiff filed a grievance on Defendant Martyn for writing a retaliatory 363 report on him for the same conduct that Plaintiff had already served sanctions for on June 21, 2011. Defendant Martyn requested that the Classification Office fire Plaintiff and place him on OO status, which would prevent Plaintiff from having a job for a period of four months. In addition, Plaintiff would be unable to receive indigent status in order to get hygiene items free of cost, which would be a problem for Plaintiff because he rarely received money from outside sources. Plaintiff was interviewed on the grievance by Defendant Parker on August 31, 2011, and his grievance was denied on September 14, 2011. Plaintiff filed a step II appeal, which was denied on October 5, 2011, by Defendant Perry, who did not interview Plaintiff's witnesses. Plaintiff's step III response was denied by Defendants Austin and Russell on December 9, 2011.

On August 6, 2011, Plaintiff filed a grievance on Defendant Nelson, complaining that she had responded to a prior grievance filed by Plaintiff on Defendant Perry.  This violated policy because Defendant Nelson was not Defendant Perry's superior.  Plaintiff claims that Defendant Nelson belittled him by stating "What, can't you fight your own battles?  You had to have your Mother call up here."  Plaintiff states that his mother had called on an unrelated matter.  Plaintiff was not interviewed on the step I grievance, and it was denied on August 15, 2011.  Defendant Perry denied Plaintiff's grievance at step II on September 23, 2011.  Defendants Austin and Russell denied Plaintiff's step III grievance on December 9, 2011.

Plaintiff claims that he asked to have witnesses interviewed with regard to each grievance, and that many of the grievance responses stated that all witnesses had been interviewed. Plaintiff complains that there was no record of the interviews or of the testimony of Plaintiff's witnesses.  Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

   Initially, the Court notes that Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties were not involved in Plaintiff's termination from his clerk job and that their only roles in this action involve the denial of administrative grievances or the failure to act.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981);

*Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties had in this action involve the denial of administrative grievances or the failure to act. Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendant Martyn's conduct in decreasing his work hours and ultimately firing him from his job violated his Fourteenth Amendment due process rights. Even assuming that what Plaintiff says is true, Plaintiff has not stated a viable due process claim. Procedural due process claims require resolution of two questions:

> [T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Hewitt v. Helms*, 459 U.S. at 472.

*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989).

Generally speaking, one determines whether a protected interest exists by determining whether the individual claiming it has a legitimate claim of entitlement to it. *Id.* at 460. The interest here at issue is whether Plaintiff, a prisoner, had an entitlement to continued prison employment in the absence of just cause for discharge. Plaintiff has no inherent constitutional right to rehabilitation, education, job assignments, or other programming. *See Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S. Ct. 2392, 2400 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374-75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980).

Nor does state law create such an entitlement. Michigan's statutes and regulations give prison authorities complete discretion regarding programming assignments of prisoners. Michigan does not have statutes or administrative rules restricting the discretion of its prison administrators concerning such decisions. Under Michigan Department of Corrections regulations, prison authorities retain broad discretion regarding the assignment of prisoners to rehabilitative programs and work assignments. *See* MICH. DEP'T OF CORR., Policy Directives 05.01.100 and 05.02.112.

Accordingly, since Plaintiff had no entitlement to or liberty interest in his job assignment, the Due Process Clause was not implicated by Plaintiff's termination, with or without cause.

Plaintiff also claims that Defendant Martyn discriminated against him on the basis of his religious beliefs because he harassed Plaintiff and fired him from his job for his attendance

at KERYX.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Plaintiff's claim that he was discriminated against for his attendance at KERYX, a Christian based conference, lacks merit because Plaintiff concedes that the other two prisoner clerks also attended KERYX and were not subjected to job restrictions by Defendant Martyn, nor were they fired from their jobs.  Therefore, the facts set forth in the complaint fail to support Plaintiff's equal protection claim.

Plaintiff alleges that his First Amendment rights were violated by Defendant Martyn's treatment of him after he attended KERYX.  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

In this case, Plaintiff's claim is that Defendant Martyn sought to prevent him from attending KERYX, a non-denominational Christian conference, and that he ultimately fired Plaintiff from his job after he attended the conference.  However, there is no indication that Plaintiff's religious beliefs required him to attend the conference.  Plaintiff fails to allege that he was prevented

-11-

from attending church, studying Christianity, praying, or otherwise exercising his religious beliefs. Therefore, the facts alleged by Plaintiff in this case fail to state a First Amendment free exercise claim.

Finally, the Court concludes that Plaintiff's retaliation claim against Defendant Martyn is nonfrivolous and may not be dismissed upon initial review. Therefore, the Court will dismiss all of Plaintiff's claims except for his retaliation claim against Defendant Martyn.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Blakely, Parker, Marshall, Sevarns, Nelson, Young, Perry, Austin, Russell, Heyns, and Unknown Parties will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Martyn with regard to Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.


Dated:  9/19/2014                               */s/ R. Allan Edgar*
                                        R. ALLAN EDGAR
                                        UNITED STATES DISTRICT JUDGE

-12-